IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMON SINGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 6672 |
| ) | |
| JANET L. YELLEN, SECRETARY, ) | |
| DEPARTMENT OF THE TREASURY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case concerns Ramon Singh's claims of employment discrimination and retaliation based on disability and national origin. Singh is of South Asian descent and states that he has a permanent disability due to cancer, heart and kidney problems, and diabetes. He has been employed since 2016 as a grade 14 (GS-14) senior revenue agent with the Internal Revenue Service (IRS), which is part of the U.S. Department of the Treasury.

Singh has sued the Secretary of the Treasury for discrimination under the Rehabilitation Act of 1992, 29 U.S.C. § 794(a) (Count 1) and discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c) (Counts 2 and 3). The Secretary has now moved for summary judgment on all of Singh's claims. For the reasons stated below, this Court grants the Secretary's motion.

### Background

The factual record the Court considers when ruling on a motion for summary

judgment is framed by the parties' Local Rule 56.1 statements and responses, although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Except as otherwise noted, the following represents the undisputed facts as presented in the parties' L.R. 56.1 statements. Due to the brevity of Singh's L.R. 56.1 statement, this Court has incorporated some of the allegations in Singh's complaint and the record to make the discussion easier to follow.

Singh, who identifies as South Asian and disabled, has worked at the IRS as a grade 14 (GS-14) senior revenue agent since 2016 within the Large Business and International division and has focused on examinations, also known as audits. During his time at the IRS, Singh has worked with multiple team managers, including Gerald Stephan from September 2019 through January 2021 and Michael Lynch from January 2021 through July 2021. Since November 2019, John Stance has served as Singh's program manager, a second-level supervisory position.

**A.     Disciplinary actions**

Singh filed a discrimination complaint, known in government lingo as an EEO complaint, in July 2018, alleging national origin and disability discrimination and retaliation. He bases his discrimination and retaliation claims on the following thirteen disciplinary actions by his managers from December 2019 through January 2021:

1.     December 20, 2019: Gerald Stephan, a manager within the IRS, filed a complaint against Singh with the Treasury Inspector General for Tax Administration (TIGTA) alleging unauthorized disclosure of taxpayer documents.

2.     February 3, 2021: Stephan filed a TIGTA complaint against Singh alleging an unauthorized disclosure. The Secretary notes that this complaint was actually

2

filed December 11, 2020.

3. October 7, 2020: Territory manager John Stance issued Singh a notice of a proposed fourteen-day suspension.

4. November 23, 2020: Stephan issued Singh a written management directive.

5. December 3, 2020: Stephan issued Singh written negative comments on case reviews.

6. December 4, 2020: Stephan issued Singh a written management directive.

7. December 7, 2020: Stephan issued Singh a written management directive.

8. December 9, 2020: Stephan issued Singh written negative comments on case reviews.

9. January 29, 2021: Stephan issued Singh a "minimally successful" departure appraisal rating for the period April 1, 2020 to January 2, 2021.

10. April 26, 2021: Michael Lynch issued Singh a minimally successful annual performance appraisal rating.

11. June 4, 2021: Lynch charged Singh with two hours of being absent without leave (AWOL) on June 3, 2021.

12. June 4, 2021: Stance issued Singh a notice of a proposed forty-five-day suspension. The director of field operations ultimately made the decision to suspend Singh in a letter from March 6, 2023 but reduced the suspension period to fourteen days, which Singh served about a couple weeks later. Singh appears to challenge only the notice of suspension, not the suspension itself.

13. March 18, April 5, April 27, and May 4, 2021: Lynch called Singh's family

home when he was unable to reach Singh.

The Court discusses these matters in greater detail below.

a. **TIGTA referrals**

TIGTA, the Treasury Inspector General for Tax Administration, is an independent agency that reviews allegations of employee misconduct within the IRS. Stephan filed two TIGTA complaints against Singh, in December 2019 and December 2020. The parties dispute the events that led to these referrals.

The Secretary argues that Stephan filed the first TIGTA complaint because Singh violated the Internal Revenue Manual (IRM) privacy requirements by storing documents in his daughter's car. In December 2019, Singh was working on an audit that required him to transport to the IRS boxes that he claims contained thousands and thousands of documents that he had picked up from a taxpayer site. Singh states that because he could not lift more than fifteen to twenty pounds due to his disability and cancer, he asked his manager to accommodate him with an Uber ride to transport the boxes without having to lift and carry them via public transportation. His manager did not approve this request. Singh then claims he had to store the remaining two to three boxes of documents in the trunk of his daughter's car. He states that he moved them the following morning into his home office, which was his designated location to telework and thus considered a secure location.

Stephan had asked Singh to bring in the documents by December 13 and then extended the deadline to December 18. After Singh asked Stephan for approval of an Uber on December 19, Stephan gave Singh until December 20 to bring in the documents. Singh brought the documents into the office on December 23.

4

Singh contends that this TIGTA referral and the IRS's refusal to reimburse Singh for an Uber constituted harassment and discrimination due to his national origin.

Stephan filed a second TIGTA referral on December 11, 2020 when Singh used his personal computer to print documents containing taxpayer information at a Kinko's in a UPS store. Singh conceded that emailing himself taxpayer documents and transferring them to a flash drive was a violation of the IRM policies. He explains, however, that he "never read any type of protocol from IRS about when a store like Kinkos can be used." Pl.'s L.R. 56.1 Stat. ¶ 9. Singh maintains that he requested a printer because his home printer was not working and says he went to Kinko's only because Stephan did not respond to his request for help. Singh contends that Stephan's second TIGTA referral was premised on national origin discrimination.

b. **Additional disciplinary actions**

Singh argues that his managers at the IRS repeatedly discriminated and retaliated against him.

On October 7, 2020, Stance issued a notice of a proposed fourteen-day suspension against Singh because he failed to follow Stephan's directive to immediately bring in taxpayer documents and instead stored the documents in his daughter's car in December 2019 (this is the incident that resulted in the first TIGTA referral). The proposed suspension was ultimately rescinded. Singh argues that the notice of suspension was based on what he calls "superfluous reasons" and that John Stance used the notice to discriminate against him and retaliate for his prior EEO filing in 2018. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. (Singh further asserts in his Local Rule 56.1 Statement that Stance "retaliated against him for prior activity under the EEO when

5

he filed this because he was upset, basically [ ] Singh was told that if I don't improve on these, there will be disciplinary action. Singh hasn't heard anybody else get told that by a territory manager." Pl.'s L.R. 56.1 Stat. ¶ 9.).

Singh also received three management directives, on November 23, December 4, and December 7, 2020. IRS team managers issue management directives when employees are not acting in line with their duties; the directive instructs the employee to take certain actions in compliance. Singh received a directive on November 23 after he did not add certain details to forms (including Form 9984 and 4502, which track an employee's time spent on cases) despite previous requests to fill out all sections of these forms. Similarly, Singh received another directive on December 4 to complete by particular dates six tasks, including completing forms and sending out taxpayer information. Singh contends that his previous manager provided him with more flexibility and leniency in filling out these forms, so he had gotten used to that process and thought that it was acceptable to fill them out the way he did. Because of this change in procedure and expectations, Singh believes the 2020 directives amounted to harassment and retaliation.

On December 3, Stephan held a case review with Singh to review his work and provide feedback. During this review, Stephan told Singh that his performance rating would be impacted if he did not improve in certain areas.

On January 29, 2021, Stephan gave Singh a "minimally successful" rating with an explanation regarding where Singh's performance was lacking and specific examples of shortcomings.

On April 26, 2021, Singh received a minimally successful rating for the

6

performance appraisal covering the previous year. Stephan included a detailed document outlining examples of problems with Singh's performance.

On June 4, 2021, Lynch charged Singh with being AWOL for two hours because he was unable to reach Singh the previous day despite contacting him through multiple modes of communication over the course of several hours.

Also on June 4, 2021, Singh received a proposed forty-five-day suspension based on three primary grounds: (1) failure to follow managerial directives; (2) failure to protect taxpayer information; and (3) committing an unauthorized disclosure of taxpayer information.

On March 18, April 15, April 27, and May 4, 2021, Lynch called Singh at home and left voicemails on his home phone line because he could not reach Singh. Singh believes these phone calls constituted "micromanagement" arising from a discriminatory bias based on his national origin and disability.

Singh also states that Stephan would make negative comments, such as "Singh was [ ] not completing job, saying you're taking too much training, and other negative comments. [Stephan] would tell Singh [he] was not completing the task in time." Pl.'s L.R. 56.1 Stat. ¶ 11. Singh also contends that issuing directives was a new process imposed by Stephan that was retaliatory for his 2018 EEO complaint.

c. **Administrative proceedings**

Singh contacted an EEO counselor on May 18, 2021. He filed a formal charge of discrimination and retaliation against the IRS on June 23, 2021 based on the actions at issue in this lawsuit. On September 8, 2022, the Treasury Department decided Singh's EEO complaint in favor of the IRS. Singh filed this lawsuit in November 2022. As

7

indicated earlier, Singh filed EEO charges in 2018 as well, involving different supervisors from those who are referenced in this lawsuit.

## Discussion

The Secretary has moved for summary judgment. Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party is then required to identify material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. In considering the motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). But when a litigant fails to respond to an argument, the litigant effectively forfeits the point and concedes the opposing party's contention. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

**A.     Timeliness**

The Secretary contends that Singh cannot base his claim on most of the incidents he cites because he did not timely contact an EEO counselor after those incidents. To maintain a claim under Title VII or the Rehabilitation Act, a federal government employee claiming discrimination must "initiate contact with a Counselor

8

within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008); *see also Edwards v. Donahoe*, 503 F. App'x 468, 471 (7th Cir. 2013) (claims under Rehabilitation Act follow same procedures for federal employees as claims under Title VII). This requirement functions as a statute of limitations. *Lapka*, 517 F.3d at 981.

It is undisputed that Singh first contacted an EEO advisor on May 18, 2021. If each act of which Singh complains is viewed as a discrete violation, then his claim or claims are timely only as to acts that took place after April 3, 2021. Discrete discriminatory acts that fall within the required time period do not make timely claims that arise from acts that fall outside the time period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002). Viewed this way, discrete Title VII and Rehabilitation Act claims arising from the nine actions described in paragraphs 6(a)-(e) of the first amended complaint, which occurred from December 20, 2019 through January 29, 2021, are untimely. Specifically, the time-barred actions include the December 2019 and December 2020 TIGTA referrals; the October 2020 notice of proposed fourteen-day suspension; the three management directives from November 23, December 4, and December 7, 2020; the December 3 and December 9, 2020 case reviews; and the January 2021 departure appraisal.

In his response brief, Singh does not respond to the Secretary's argument that claims arising from these acts are time-barred by the forty-five-day deadline. He does not even mention the issue of timeliness, let alone argue for an exception, like equitable tolling. *See Lapka*, 517 F.3d at 981 (indicating that equitable tolling can apply to the

9

forty-five-day counselling requirement). By failing to address the point, Singh has conceded that any separate claims arising from discrete acts that took place before April 3, 2021 are untimely.

A claim asserting a hostile work environment is viewed differently. The "very nature [of such a claim] involves repeated conduct," and "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115. In such a case, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

Though, as indicated, Singh does not reference the Secretary's limitations argument in his brief, he does appear to characterize his claims as asserting a hostile work environment, as opposed to a series of separate claims arising from discrete acts. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6-8. The Secretary argues that Singh did not allege such a claim in his complaint and should be precluded from arguing his case this way now. The Court will address that point later in this decision. For present purposes, if Singh's claim is considered as a single hostile work environment claim under Title VII and/or the Rehabilitation Act, it is timely under *Morgan.*

In the next section, the Court will address the merits of Singh's claims if one considers them as separate claims of discrimination and retaliation arising from individual acts. The timely claims for this purpose involve those arising from the April 26, 2021 appraisal rating, the June 3, 2021 AWOL charge, the June 4, 2021 notice of a proposed suspension, and the phone calls to Singh's home on March 18, April 5, April 27, and May 4, 2021.

10

B.   **Retaliation claims under Title VII and Rehabilitation Act (Count 3)**

Singh asserts retaliation claims under Title VII and the Rehabilitation Act. He alleges that his managers retaliated against him because he asserted EEO charges in 2018 and 2021. Singh correctly states that "[t]o establish a prima facie case for unlawful retaliation, a plaintiff must prove three elements: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001). The Court need not address the first and second elements, because Singh fails on the third.

Singh is unable to establish a causal connection between his EEO charge in 2018 and the alleged adverse actions he experienced in 2021. In his response brief, Singh states that he believes Stephan was "upset" when he filed his EEO complaint and told Singh that he would need to improve or would face disciplinary action. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11. But Singh does not support his beliefs with any evidence or details that would permit a reasonable jury to find that his managers knew of his EEO complaint and retaliated against him *because of* his protected activity. *See Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023); *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) ("Clearly, a superior cannot retaliate against an employee for a protected activity about which he has no knowledge."). The 2018 EEO complaint was asserted against Lisa Valdez and Renee Banks, different managers from those who took the actions in 2021. Singh does not point to any evidence indicating that his 2021 managers were aware of his 2018 EEO complaint.

Also fatal to Singh's retaliation claim arising from his 2018 EEO charge is the fact

that he filed the charge more than three years before the alleged retaliatory actions. Three years is too long of an interval to permit a reasonable inference of retaliatory motive without some other evidence indicating a causal connection, which Singh has not identified. *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531–32 (7th Cir. 2003) (finding no causal link because the claimed retaliation took place a year after the protected activity).

Singh's assertion of a claim of retaliation based on his 2021 EEO charge fares no better. Singh filed a formal charge of discrimination with the EEO on June 23, 2021. All the alleged adverse actions that he complains of, however, occurred before that date. These actions cannot have been in retaliation for protected activity that had not yet occurred.

The AWOL charge on June 23, 2021 and proposed suspension on June 4, 2021 occurred shortly after Singh contacted an EEO counselor on May 18, 2021, which potentially could serve as the predicate for a claim of retaliation. Singh does not argue the case this way, and he has not pointed to evidence that would suggest that his supervisors were aware that he met with an EEO counselor. This leaves him unable to prove a causal connection between the meeting and the purported retaliatory incidents.

In sum, no reasonable jury could find in favor of Singh on his retaliation claims.

## C.   Discrimination claim under Title VII (Count 2)

Singh contends that his supervisors at the IRS discriminated against him based on his national origin in violation of Title VII. It is unclear which test Singh uses to address his discrimination claim. Because Singh does not mention the *McDonnell Douglas* burden-shifting analysis and because he uses the *Ortiz* method, which applies

to both discrimination and retaliation claims, in arguing his retaliation claim, the Court will apply *Ortiz* in addressing his discrimination claim. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016); *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

In describing the *Ortiz* standard, the Seventh Circuit has stated that "*all* discrimination cases present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (internal quotation marks and citation omitted). *Ortiz* did not displace *McDonnell Douglas* burden-shifting, but because Singh has used the *Ortiz* test, the Court does the same. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (" [A] plaintiff need not use the *McDonell Douglas* framework after *Ortiz*."); *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (court analyzes claims under *McDonnell Douglas* because the plaintiff used that test as opposed to *Ortiz*).

Considering the evidence as a whole, there is insufficient evidence for a reasonable jury to find that Singh suffered adverse employment actions due to his national origin. *See Ortiz*, 834 F.3d at 765 ("Evidence must be considered as a whole . . . ."). The Court need not decide whether the appraisal rating, the notice of a proposed suspension, the AWOL charge, and the phone calls were actionable adverse actions. Even if they were, Singh has not provided any evidence, direct or circumstantial, that would permit a reasonable jury to find that his supervisors acted upon discriminatory

13

animus regarding his national origin.  First, Singh has not pointed to any statements that his supervisors made indicating an animus against South Asians, any earlier events from which such animus might be inferred, or any data about past national origin-based discrimination at the IRS.  *See Vega v. Chicago Park Dist.*, 954 F.3d 996, 1004-06 (7th Cir. 2020) (discussing various types of circumstantial evidence that can be used to show discriminatory intent).  Singh states that Stephan berated and criticized him, but that is insufficient without more to enable a finding of discriminatory intent.  *See, e.g., Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir. 1997) ("[I]nappropriate but isolated comments that amount to no more than stray remarks in the workplace will not do" to prove discriminatory motive) (internal quotation marks omitted).

 Singh also offers no evidence that would permit a finding that the justifications the IRS provided for the disciplinary actions were pretextual.  The record illustrates that the IRS has provided consistent explanations as to why it issued disciplinary actions against Singh, such as violations of policy and not performing up to expectations.  *See Vega*, 954 F.3d at 1005 ("[F]lagrant inaccuracies and inconsistencies in the employer's supposed reason for firing the plaintiff can be evidence of pretext.") (internal quotation marks and citation omitted).  Singh argues only that he does not believe the proffered justifications were truthful.  He does contend that other supervisors did not follow the same procedures that Stephan did in asking him to completely fill out certain forms, an issue that Stephan identified in his feedback to Singh.  But Singh offers nothing to suggest that in doing so, Stephan was deviating from IRS policy or that he was applying IRS policies inconsistently.  Singh's speculation about Stephan's motives is insufficient to avoid summary judgment.

14

To prove discriminatory intent, a plaintiff may also cite evidence of other similarly situated employees—employees outside of the plaintiff's protected class who are directly comparable in all material aspects to the plaintiff but who were not subject to adverse actions. *See Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). In his interrogatory responses, Singh identified purportedly similarly situated IRS employees, Kathy Austin, Peter Gavas, and Bill Moore, who he says were not discriminated against. But Singh does not even mention these employees in his response brief and does not respond to the Secretary's arguments that these employees are not in fact similarly situated to Singh. He thus effectively concedes the Secretary's point. Singh has offered no basis upon which a reasonable jury could conclude that any of these employees were similarly situated to him.

The Secretary is entitled to summary judgment on Singh's Title VII discrimination claim to the extent it is based on discrete acts of claimed discrimination.

**D.  Discrimination under Rehabilitation Act (Count 1)**

Singh also claims discrimination based on disability in violation of the Rehabilitation Act. The Rehabilitation Act protects federal government employees from discrimination based on disability. *See* 29 U.S.C. § 794(a). "In order to defeat summary judgment on [his] disability discrimination claim, [Singh] must point to evidence capable of establishing that (1) [he] is a person with a disability within the meaning of the . . . Rehabilitation Act; (2) [he] is qualified to perform the essential functions of [his] job with or without a reasonable accommodation; and (3) [he] suffered from an adverse employment decision as a result of [his] disability." *Guzman v. Brown County*, 884 F.3d 633, 641 (7th Cir. 2018) (citation omitted).

15

Singh has not adequately argued the elements of establishing discrimination under the Rehabilitation Act. It is not possible for the Court to determine that a reasonable jury could find that Singh has a disability within the meaning of the statute, as he has not described how any claimed disability affects his normal life activities, other than saying that he suffers from various medical conditions, including cancer, heart and kidney problems, and diabetes. That aside, even if Singh can establish the first two elements of a Rehabilitation Act claim, he has not provided evidence to prevail on the third element. As the Secretary notes, the causation element in a Rehabilitation Act claim is stricter than Title VII: it requires disability to be the *sole* reason for the employer's action. *See Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021); *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022).

Singh has not pointed to evidence that would allow a reasonable jury to infer that he was discriminated against due to his disability, let alone that this was the sole basis for any discrimination. As with his claim of national origin discrimination, Singh does not cite any evidence of discriminatory statements or animus on the part of his managers and no incidents indicating bias towards disabled individuals. He likewise identifies no similarly situated employees who were treated better, as he has not pointed to evidence that any of the claimed comparators were non-disabled. *See Fuller v. McDonough*, 84 F.4th 686, 691 (7th Cir. 2023) (indicating that evidence of similarly situated employees treated better could establish causation under the Rehabilitation Act).

For these reasons, the Secretary is entitled to summary judgment on Singh's claim of discrimination under the Rehabilitation Act to the extent it is based on discrete acts of discrimination.

**E.     Hostile work environment claim**

In his first amended complaint, Singh did not say in so many words that he is proceeding under a hostile work environment theory of discrimination under Title VII or the Rehabilitation Act.  In his response brief, however, Singh argues that the IRS's conduct constituted "degrading and humiliating" harassment that made "Singh's work environment unbearable and unfriendly."  Pl.'s Singh's Resp. to Def.'s Mot. for Summ. J. at 8.  The Secretary argues that the Court should ignore this contention because Singh did not formally plead a hostile work environment claim in his first amended complaint.  The Court is inclined to disagree.  A hostile work environment claim is simply a variety of a claim of discrimination in the terms and conditions of employment, and Singh unquestionably asserted in his complaint claims of discrimination under Title VII and the Rehabilitation Act.  But even if one reads the complaint as asserting a hostile work environment claim, Singh cannot succeed on the merits.

To survive summary judgment, Singh must "present evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal quotation marks and citation omitted).

Singh's claim founders on the second element.  As discussed in detail in earlier sections of this decision, Singh has not identified evidence that would allow a reasonable jury to infer that the purportedly hostile work environment or any harassment was based on his disability or national origin.  For this reason, the Secretary is entitled

17

to summary judgment on any hostile work environment claim as well.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 41]. The Clerk is directed to enter judgment stating: This case is dismissed with prejudice.

Date: December 30, 2024

_____
MATTHEW F. KENNELLY
United States District Judge